TSIOLIS, Appellant v. HATTERSCHEIDT, Respondent

(187 N.W.2d 104)

(File No. 10750.   Opinion filed May 20, 1971)

**Morris Myers,** Aberdeen, for plaintiff and appellant.

**Douglas W. Bantz, Robert A. Michaels,** Aberdeen, for defendant and respondent.

DUNN, Circuit Judge.

Plaintiff, Christina Tsiolis, began this action against the defendant, Fred Hatterscheidt, for an accounting of rents. The defendant sought an offset for commissions alleged to be due him for projected rents on leases which he had negotiated and which had not terminated. The trial court gave judgment to the plaintiff for the full amount of the rents due plus interest; and also gave judgment to the defendant for the full amount of his claimed offset for commissions plus interest. This appeal is from the part of the judgment allowing the offset to the defendant.

The evidence indicates that on August 12, 1937, the plaintiff, Christina Tsiolis, and her husband John Tsiolis, entered into a contract with the defendant, Fred Hatterscheidt, whereby the defendant was to lease and manage certain property under broad powers which included the right to collect the rentals, make leases, institute actions, pay upkeep and repairs, taxes and insurance, pay loan payments and as compensation, defendant was to receive a 5% commission of all store and office rentals and 6% of all apartment rentals "under leases now in force and leases made hereafter during the life of this agreement." The last paragraph of the contract provided:

> "All parties hereto agree that this agreement shall remain in full force and effect for a period of five (5) years, and it is expressly agreed that F. W. Hatterscheidt shall have the right to terminate his duties as Agent hereunder by giving thirty (30) days notice in writing to the Grantors. In the event of the termination of the services of F. W. Hatterscheidt, as above provided, said F. W. Hatterscheidt shall, nevertheless, be entitled to the commission agreed upon of all rentals under leases now in force and leases made during the term of his service under this agreement."

After the termination of the written agreement by its terms on August 12, 1942, the defendant continued to manage the Tsiolis property in the same manner that he had operated under the written agreement. In 1955, after there had been some change in ownership and some disagreement among the parties, defendant prepared a new written contract (Exhibit 20) which was almost identical to the old contract and sent it to the Tsiolises for signature. They refused to sign this new agreement and the arrangement continued until 1964. In the meantime, John Tsiolis had died, the interests of other owners had been dissolved and Christina was the remaining owner of the property. In 1964, Christina requested the defendant to turn the management of the property over to her nephew. The defendant agreed, provided he received his projected commissions on all rentals which he had negotiated and which had not expired. This was refused and this action resulted.

Plaintiff's first contention is whether the evidence is sufficient to justify the trial court's Finding No. 7 which found that the written agency agreement of August 12, 1937, governed the parties from that date until August 31, 1964, without modification.

■ In this connection we are first met with Rule 15-6-52(a) which states, "Findings of fact shall not be set aside unless clearly erroneous". Here the parties operated harmoniously under the general terms of the original written agreement for 27 years. Oral statements by John Tsiolis during his lifetime further indicated that the parties were operating under the original agreement. It is true that the question of commissions on projected rentals was never raised during this 27 years because there was no occasion for it. However, it is equally true that there had never been any effort to remove this clause from the working arrangement during this period. The trial court might have reached a different finding from these facts, but it cannot be said that Finding No. 7 was clearly erroneous under the evidence.

This is also true of plaintiff's assignment No. 2. The trial court found that the negotiation of leases with responsible tenants was an important and integral part of the en-

tire agreement, entitling the defendant to compensation under the clause in question. There was competent evidence to support this finding.

Plaintiff's next contention is that the clause as to projected rentals was unconscionable in that the defendant could negotiate long leases, terminate his agreement and sit back and collect his commissions without performing any of the duties set out in Exhibit 1. The provision for projected commissions does appear to be slanted in favor of the defendant without any safeguards for the plaintiff. Generally speaking, however, in the absence of any mistake, fraud or oppression, the courts are not interested in the wisdom or impolicy of contracts and agreements voluntarily entered into between parties compos mentis and sui juris. 17 Am.Jur. 2d, Contracts, § 192. It is only when the inequality of the bargain "is such as to shock the conscience of the court" that relief will be granted. Marker v. Van Gerpen, 39 S.D. 648, 166 N.W. 151. The arrangement here does not indicate any result that should shock the conscience of the court. Exhibit 41 sets out the leases and the terms of the leases which had all expired prior to the date of trial.

Finally we go to the question of whether the court abused its discretion in refusing to grant plaintiff's motion permitting leading questions and head moving responses from Mrs. Tsiolis who had suffered a stroke prior to the time of trial and was unable to communicate otherwise.

The record reveals that Mrs. Tsiolis suffered a stroke and her ability to speak intelligibly was destroyed. She had been declared incompetent at some time prior to the date of trial and in the absence of any medical evidence to the contrary, the trial court did not abuse its discretion in denying the motion. While it is true that this left plaintiff with no evidence as to her version of the working arrangement, it would seem that her refusal to pay the commission in 1964 would probably state her position just as vividly as motions of the head at the time of trial. This does point up the grave responsibility of counsel to bring matters on for trial. This matter was delayed for several years after suit was filed and

it was during this period that Mrs. Tsiolis became incompetent.

The judgment of the trial court is affirmed.

RENTTO, P. J., and BIEGELMEIER and WINANS, JJ., concur.

HANSON, J., dissents.

DUNN, Circuit Judge, sitting for WOLLMAN, J., disqualified.

HANSON, Judge (dissenting).

I am unable to agree.

Our disposition does not require a review of the facts to determine their sufficiency. In my opinion there is a primary legal question involved, i. e., the interpretation of the contract.

The contract entered into by the parties was prepared by defendant Hatterscheidt. Although a bilateral contract, its benefits are unilaterally in favor of its author.

The contract is silent as to the property owners' right to rescind the contract before its expiration date. Apparently, if they did terminate or rescind, they would subject themselves to an action for damages for breach of the contract. However, the contract gives Hatterscheidt the right to terminate the contract at any time and in that event he would be entitled to future commissions and rentals. The contract provision in this regard reads as follows:

> "All parties hereto agree that this agreement shall remain in full force and effect for a period of five (5) years, and it is expressly agreed that F. W. Hatterscheidt shall have the right to terminate his duties as Agent hereunder by giving thirty (30) days notice in writing to the Grantors. In the event of the termination of the services of F. W. Hatterscheidt, **as above provided,** said F. W. Hatterscheidt shall, nevertheless, be entitled to the commission agreed upon of all rentals under leases now in force

and leases made during the term of his service under this agreement." (emphasis supplied)

Construing the contract as it reads, Hatterscheidt is entitled to future commissions and rentals when, and only when, he terminates the contract before its expiration date. As he did not terminate the contract this clause is not applicable and he is not entitled to receive credit for future rentals and commissions.

I would reverse.