[Civ. No. 2894. First Appellate District, Division Two.—October 24, 1919.]

## PAULINE VARROIS, Appellant, v. MARIE GOMMET, as Executrix, etc., et al., Respondents.

[1] TRUSTS—VOLUNTARY TRUSTS—REPUDIATION OF—STATUTE OF LIMITATIONS.—In the case of a voluntary express trust where the estate is to be managed for the benefit of the trustor to be returned on demand, the statute of limitations does not begin to run until after a repudiation of the trust. The same rule is applicable to voluntary resulting trusts.

[2] ID.—INVOLUNTARY IMPLIED TRUSTS—REPUDIATION UNNECESSARY.— In the case of an involuntary implied trust raised by operation of law no repudiation of the trust is necessary to start the running of the statute of limitations.

[3] ID.—ACTION TO ENFORCE—NATURE OF TRUST ALLEGED.—In this action for a judgment decreeing that certain real estate and personal property was the property of plaintiff and held by defendant in trust for plaintiff, for the transfer of such property to the plaintiff, and for an accounting, the pleader alleged facts showing an express voluntary trust arising out of the confidential relations existing between the parties, the repudiation of which was necessary to start the running of the statute of limitations.

[4] ID.—PROHIBITED TRUSTS—CONSTRUCTION OF SECTIONS 724 AND 857, CIVIL CODE.—Such trust, in providing for accumulations after minority and permitting the conveyance of real property, was not void under sections 724 and 857 of the Civil Code. Section 724 of the Civil Code is a limitation upon the power to create future interests by will or transfer in writing, but has no application to the deposit of money with an adult to be invested for the use and benefit of the owner, while section 857 relates only to the creation of a trust for the benefit of a third person.

[5] ID.—TRUST TO RECEIVE AND HOLD PROPERTY.—A trust to receive and hold real property to be transferred to the trustor on demand is not a trust to convey within the meaning of *Estate of Fair,* 132 Cal. 523.

[6] ID.—LACHES—DEMURRER.—It is only when laches affirmatively appears on the face of the complaint that this defense can be raised by demurrer.

1. Application of statute of limitations as between trustee and beneficiary of express trust, notes, 3 Ann. Cas. 200; 13 Ann. Cas. 1165; Ann. Cas. 1917C, 1018.

[7] ID.—ACTION TO ENFORCE—LACHES.—Where suit to enforce an express voluntary trust is commenced within less than two months after the rejection of demand upon the executrix of the estate of the deceased trustee and within three days after rejection of demand by the surviving trustee, this does not constitute such delay as would warrant the court in holding that the plaintiff was guilty of laches in the institution of the proceedings.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Reversed.

The facts are stated in the opinion of the court.

James P. Sweeney and Frank J. Fontes for Appellant.

H. U. Brandenstein for Respondents.

NOURSE, J.—Plaintiff sued Marie Gommet individually and as executrix of the estate of Fleury Gommet for a judgment decreeing that certain real and personal property was the property of plaintiff and held by said defendant in trust for plaintiff, for the transfer of such property to the plaintiff, and for an accounting. Three banks were joined as defendants upon allegations that they held moneys of the plaintiff which were deposited with them by the Gommets for the use and benefit of the plaintiff. No appearance was made for them. A demurrer, both general and special in form, was interposed to the amended complaint on behalf of the defendant Gommet individually and as such executrix. This demurrer having been sustained without leave to amend, judgment was rendered in favor of defendant and this appeal followed.

Appellant argues upon all the grounds raised by the demurrer, but respondent relies solely upon the grounds that plaintiff's action is barred by the statute of limitations and by her laches. As to the other grounds of demurrer it is sufficient to say that they are without merit, and no discussion need be had as to them because abandoned by respondent upon this appeal.

The issue upon this appeal is, does the amended complaint, being confessed by the demurrer, present a cause of

7. Laches which will defeat relief after repudiation of express trust, note, 5 L. R. A. (N. S.) 986.

action which upon its face is not barred by the statute of limitations or by the laches of plaintiff.

The allegations of the amended complaint are that plaintiff came to San Francisco from a foreign country when but seventeen years of age and took up her abode with her elder sister, the defendant Marie Gommet; that about the twentieth day of December, 1900, plaintiff entered into an agreement with Marie Gommet and Fleury Gommet, her husband, whereby they agreed to accept and receive all moneys deposited with them in trust by plaintiff, to be invested, managed, and controlled by them for the use and benefit of plaintiff until the same might be demanded by her. It is also alleged that by this agreement said defendants were to invest such part of said moneys in real estate as they might deem proper, and to transfer the same to plaintiff on demand, together with the rents, issues, and profits. A description is given of the real and personal property alleged to have been purchased with money so given them by plaintiff from time to time from 1900 to 1906, which are alleged to have totaled the sum of fifty-four thousand dollars. Fleury Gommet died March 31, 1917. Marie Gommet duly qualified as executrix of his estate, and within time thereafter plaintiff presented her claim to such executrix and demanded the transfer of all the property so alleged to be held in trust for her, and soon thereafter made similar demand upon Marie Gommet individually. Both demands were rejected, and thereupon for the first time plaintiff had knowledge of the repudiation of the alleged trust. The action was instituted immediately after the rejection of the last demand.

Respondent argues that her plea of the bar of the statute was good, because (1) where a demand is necessary to set the statute of limitations running, the demand must be made within the time prescribed for the commencement of the action upon the original obligation; and (2) that the alleged trust was an express trust of the type forbidden by the law of this state, and being invalid, gave rise to an implied trust against which the statute began to run immediately without demand and without repudiation.

[1] Generally speaking, respondent's position as to the time when demand must be made is correct, but in the case of a voluntary express trust where the estate is to be

managed for the benefit of the trustor to be returned on demand, the statute of limitations does not begin to run until after a repudiation of the trust. (*Schroeder* v. *Jahns,* 27 Cal. 274, 280; *MacMullan* v. *Kelly,* 19 Cal. App. 700, 706, [127 Pac. 819]; *Norton* v. *Bassett,* 154 Cal. 411, 419, [129 Am. St. Rep. 162, 97 Pac. 894]; *Arnold* v. *Loomis,* 170 Cal. 95, 98, [148 Pac. 518]; *Hughes* v. *Silva,* 42 Cal. App. 785, [184 Pac. 415].) The same rule is applicable to actions to enforce a voluntary resulting trust. (*Roach* v. *Caraffa,* 85 Cal. 436, 446, [25 Pac. 22]; *Faylor* v. *Faylor,* 136 Cal. 92, 96, [68 Pac. 482]; *Arnold* v. *Loomis, supra.*)

[2] It is true, as urged by respondent, that in the case of an involuntary implied trust raised by operation of law no repudiation of the trust is necessary to start the running of the statute of limitations. (*Benoist* v. *Benoist,* 178 Cal. 234, [172 Pac. 1109]; *Earhart* v. *Churchill Co.,* 169 Cal. 728, 731, [147 Pac. 942].)

[3] It becomes important, then, to determine the character of the trust here involved. If it was an involuntary implied trust, then under the authorities last cited respondent's plea of the bar of the statute was good and the judgment of the trial court must be affirmed. On the other hand, if it was a voluntary express or resulting trust, the statute did not commence to run until after repudiation. It is alleged that the moneys were given to the trustees "to invest, loan out, care for, manage and control said moneys so deposited by plaintiff with them, or either of them, for the use and benefit of said plaintiff, until the same might be demanded by said plaintiff; to invest such part of said moneys in real estate for plaintiff as in the judgment of said Fleury Gommet, now deceased, and said Marie Gommet, seemed for the best interests of said plaintiff, and to transfer said real estate so acquired by said Fleury Gommet, now deceased, and said Marie Gommet, or either of them, to said plaintiff on demand of said plaintiff, together with all rents, issues, and profits thereof; to lend such part of said moneys as in the judgment of said Fleury Gommet, now deceased, and said Marie Gommet, seemed for the best interests of this plaintiff at interest and to take good security therefor; to transfer all evidences of such loans and securities to said plaintiff on said plaintiff's demand; and to hold such balance of said moneys as had

not been previously invested or loaned to the order of this plaintiff, for the use and benefit of said plaintiff, until demanded by plaintiff." Also "that it was the agreement and intention of plaintiff and said Fleury Gommet, during his lifetime, and Marie Gommet, that said defendant Marie Gommet and said Fleury Gommet should hold and continue to hold said property during all of said times for the use and benefit of plaintiff, in order that the same might be increased by accumulations of interest, rents, issues, and profits; that plaintiff always believed that said property would be delivered and transferred to her upon her request or demand, and was so told and assured by said Fleury Gommet on many occasions during his lifetime and up to the time of his death, and also by her said sister the defendant Marie Gommet."

From these allegations it is apparent that the pleader alleged an express voluntary trust arising out of the confidential relations existing between the parties. [4] But respondent argues that, as the trust provided for accumulations after minority and permitted the conveyance of real property, it was void as an express trust under sections 724 and 857 of the Civil Code prohibiting trusts for accumulations beyond minority and trusts to convey realty. From this it is argued that it must be treated as an implied trust only. But section 724 is a limitation upon the power to create future interests by will or transfer in writing. It has no application to the deposit of money with an adult to be invested for the use and benefit of the owner, while section 857 relates only to the creation of a trust for the benefit of a third person. [5] Furthermore, a trust to receive and hold real property to be transferred to the trustor on demand is not a trust to convey within the meaning of the *Estate of Fair,* 132 Cal. 523, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000]. If, as alleged in the amended complaint, real property was purchased by the trustees with the money of appellant, then, in the absence of any other specific agreement, a trust resulted under the terms of section 853 of the Civil Code. Such a trust is valid as one created or declared by operation of law. (Civ. Code, sec. 853.) A trust so created or declared becomes a voluntary trust as to the trustee "by any words or acts of his indicating, with reasonable certainty: 1. His accept-

ance of the trust, or his acknowledgment, made upon sufficient consideration, of its existence." (Civ. Code, sec. 2222.)

The complaint alleges both acceptance and acknowledgment on the part of both trustees, the continuance of the confidential relations between the parties, and the promises to turn over the property to appellant, made up to the time of the death of the trustee Fleury Gommet. There is thus pleaded an express trust created by the original agreement, with the possibility of a resulting trust so far as the realty is concerned growing out of the trustees' own acts in purchasing the realty with the funds of the trustor. In either event, a voluntary continuing trust was created, against which the statute would not commence to run until a repudiation of the trust on the part of the trustees was brought to the knowledge of the trustor. (*Arnold* v. *Loomis,* 170 Cal. 95, 98, [148 Pac. 518]; *Taylor* v. *Morris,* 163 Cal. 717, 725, [127 Pac. 66]; *Roach* v. *Caraffa,* 85 Cal. 436, 446, [25 Pac. 22].) In the latter case the supreme court say: "If, now, it affects any real estate, as it presently appears to do, it has been made to do so because of the act of the trustee, and by operation of law under sections 852 and 853 of the Civil Code; but this does not change its character of express trust. A resulting trust, under section 853, may still be an express trust. It was not alone an express trust, but a continuing trust, and the statute of limitations would not run against the *cestui que trust,* until repudiation by trustee brought home to the knowledge of the beneficiary." This is clearly the rule of law in this state, and further citation of authority is unnecessary.

Respondent next urges that the action is barred by the laches of appellant. The facts alleged are that at all the times during the continuance of the trust both trustees reaffirmed their obligations and promised to return the property on demand; that their relations were friendly and cordial, and appellant had no reason to anticipate that there would be a repudiation on the part of either trustee until she filed her claim against the estate of Fleury Gommet. The action was commenced within a few months after the rejection of this demand. [6] It is only when laches affirmatively appears on the face of a complaint that this

defense can be raised by demurrer. [7] The demand upon the executrix was rejected on August 22, 1917. The demand made upon the respondent individually was rejected October 15, 1917. This suit was instituted October 18, 1917. This does not constitute such delay as would warrant the court in holding that the plaintiff was guilty of laches in the institution of the proceedings. (*Lamb* v. *Lamb*, 171 Cal. 577, [153 Pac. 913]; *Cooney* v. *Glynn*, 157 Cal. 583, 589, [108 Pac. 506]; *Hughes* v. *Silva*, 42 Cal. App. 785, [184 Pac. 415].)

For the reasons given the judgment is reversed, with directions to the trial court to overrule the demurrer and to grant leave to the respondent to answer the amended complaint.

Langdon, P. J., and Brittain, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 22, 1919.

All the Justices concurred, except Melvin, J., who was absent.